UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANTHONY J. PANARELLO,

    Petitioner,

  v.

RICHARD MORGAN,

    Respondent.

CASE NO. C06-124-JCC

ORDER

This matter comes before the Court on Anthony J. Panarello's petition for a writ of habeas corpus. This Court has received a Report and Recommendation ("R&R") from U.S. Magistrate Judge James P. Donohue (Dkt. No. 20), Petitioner's objections (Dkt. No. 21), Respondent's response (Dkt. No. 23), and Petitioner's reply (Dkt. No. 25).[1] After reviewing the R&R, the parties' submissions, and the complete record in this case, this Court concludes that oral argument is not necessary, and Petitioner's habeas petition and motion for remand are hereby DENIED for the following reasons.

**I.    BACKGROUND**

In 2003, Petitioner failed to stop his truck when requested by police. In the ensuing police chase,

---

[1] Petitioner has also filed a motion to remand this action to state court (Dkt. No. 24), to which Respondent has submitted a response (Dkt. No. 26).

ORDER – 1

Petitioner struck four different police vehicles and injured one police officer. (R&R 1–2.) Petitioner subsequently pled guilty to attempting to elude a police vehicle, driving with a suspended license, possession of a stolen firearm, and two counts each of second degree assault and first and second degree malicious mischief.[2] (Record (Dkt. No. 15) Ex. 1.) In 2005, Petitioner filed a Personal Restraint Petition ("PRP") in the Washington Court of Appeals, seeking to withdraw his guilty plea on the grounds that he had received ineffective assistance of counsel. (*Id.* Ex. 4.) The court dismissed Petitioner's PRP and the Washington Supreme Court denied review. (*Id.* Exs. 13, 16.) Petitioner subsequently filed a federal habeas petition contending that he was denied his Sixth Amendment right to effective assistance of counsel and that his guilty pleas were made equivocally and without proper constitutional safeguards. (Petition (Dkt. No. 1).)

## II.   STANDARD OF REVIEW

This Court reviews the record *de novo* when considering objections to a magistrate judge's R&R. *See* 28 U.S.C. § 636(b)(1). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2). A state court decision is contrary to Supreme Court precedent if the state court (1) arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronted facts that are materially indistinguishable from relevant Supreme Court precedent but arrived at an opposite conclusion. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A federal habeas court may not issue a writ simply because that court concludes in its independent judgment that the relevant

---

[2] In a related case, Petitioner pled guilty to delivery of methamphetamine. (R. Ex. 2.)

ORDER – 2

state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (citing *Williams*, 529 U.S. at 411).

## III. ANALYSIS

Petitioner charges ineffective assistance of counsel on three basic grounds. First, Petitioner claims that his first trial counsel Thomas Pacher failed to inform him of his state statutory rights regarding his psychological evaluation. Second, he claims that his second trial counsel Deborah Truitt was inexperienced, and, as a result, that she inappropriately took advice from Mr. Pacher. Third, Petitioner asserts that Ms. Truitt abandoned a viable "fight or flight" defense. In addition, Petitioner contends that his guilty pleas made pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), were made equivocally and without proper constitutional safeguards. Petitioner has also filed a separate "motion to remand" this action to state court.

### A. *Ineffective assistance of counsel claims*

In order to prove ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was objectively unreasonable, and that (2) the defective performance resulted in prejudice to Petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, judicial scrutiny of counsel's performance must be highly deferential, allowing counsel wide discretion in making tactical decisions. *Id.* at 689. The second prong requires a showing of actual prejudice. It is not enough for Petitioner to show that the errors could have had some conceivable effect on the outcome of the proceeding. *Id.* at 693. Prejudice, however, may be presumed in certain situations, including where there has been an "actual or constructive denial of the assistance of counsel altogether," or when counsel is "burdened by an actual conflict of interest." *Id*. at 692. The reviewing court need not address both prongs of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

#### 1. **Petitioner's allegedly deficient competency evaluation**

Petitioner contends that his first trial counsel's performance was defective because he failed to

ORDER – 3

inform Petitioner of his rights under Washington law to two psychological examiners and to have his attorney present during his competency evaluation.[3] As a result, Petitioner was evaluated by a single examiner without his attorney present. (Obj. 4.) Petitioner argues that this Court should presume prejudice from these events because the psychological evaluation was a "critical stage" of his trial. (*Id.* at 6.) Alternatively, Petitioner claims that he suffered prejudice because the single psychological evaluation made him uncertain as to whether he had a viable defense.[4] (*Id.* at 11.)

The Sixth Amendment right to counsel encompasses all critical stages of a criminal prosecution. *U.S. v. Wade*, 388 U.S. 218, 224 (1967). In *Estelle v. Smith*, 451 U.S. 454, 471 (1981), the Supreme Court held that the defendant had a right to consult with his attorney before undergoing a psychological evaluation because the evaluation proved to be critical to the outcome of his trial. The Supreme Court noted, however, that the Fifth Circuit decision below did not find any constitutional right to have counsel actually present during a psychological evaluation. It quoted the Fifth Circuit as stating: "'an attorney present during a psychiatric interview could contribute little and might seriously disrupt the examination.'" *Id.* at 470 n.14 (quoting *Estelle v. Smith*, 602 F.2d 694, 708 (5th Cir. 1979)). There is therefore no federal right to have counsel present at a psychological evaluation, regardless of a provision therefor under state law. Accordingly, prejudice cannot be presumed here.

Further, Petitioner's general claim that he may have been able to establish a viable defense, had his attorney and an additional examiner been present at his evaluation, is insufficient to show prejudice under

---

[3] Washington Revised Code section 10.77.020(3) provides that: "Any time the defendant is being examined by court appointed experts or professional persons pursuant to the provisions of this chapter, the defendant shall be entitled to have his or her attorney present." Washington Revised Code section 10.77.060(1)(a) provides a right to two examiners "whenever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his or her competency."

[4] Petitioner also claims that because his attorney was not present, "the conduct of the psychological examination was forever foreclosed from meaningful adversarial testing of its conclusions." (Obj. 10–11.) This is untrue. If Petitioner had chosen to plead not guilty, his attorney would have been able to challenge the results of the evaluation at trial. *See, e.g., U.S. v. Glover*, 596 F.2d 857, 865–67 (9th Cir. 1979); *U.S. v. Bodey*, 547 F.2d 1383, 1385 (9th Cir. 1977); *U.S. v. Valtierra*, 467 F.2d 125, 126 (9th Cir. 1972).

ORDER – 4

*Strickland*. In *Estelle*, the defendant's attorney was not informed that the defendant's psychological examination would include an evaluation of future dangerousness, and therefore the defendant was not able to confer with his attorney about whether to submit to the examination or discuss how its results could be used at trial. At trial, the examiner testified based on the results of the evaluation that the defendant was dangerous, and the defendant was sentenced to death as a result. *Id.* at 470–71. Whereas prejudice existed in *Estelle*, the same is not so here. In the instant case, Petitioner does not argue that he was denied access to counsel before his psychological evaluation. Nor does he charge that his attorney failed to inform him of his rights during the examination or that he was uninformed of the substance of the examination.[5] Furthermore, Petitioner offers no evidence of how the presence of his attorney or another examiner would have altered the evaluation's findings. The Washington Court of Appeals' rejection of this subclaim was therefore consistent with federal law.

### 2. Second counsel's inexperience or conflict of interest

Petitioner argues that his second trial counsel Ms. Truitt had no felony trial experience, and, as a result, that she was unable to make independent decisions regarding his defense. (Pet'r's Reply Ex. A at 4.) Specifically, Petitioner charges that Ms. Truitt improperly accepted advice from Mr. Pacher to request a Bill of Particulars in Petitioner's case. (*Id.*) The advice was improper, Petitioner asserts, because he had previously "fired" Mr. Pacher for misstating Petitioner's criminal history, for abandoning his developing "fight or flight" defense theory, and because of their "complete communications breakdown." (*Id.* at 3.) Citing *Holloway v. Arkansas*, 435 U.S. 475, 490–91 (1978), Petitioner claims that Ms. Truitt's consultation with Mr. Pacher constituted a conflict of interest and therefore that prejudice to his case should be presumed. (Obj. 5.)

*Holloway* concerned counsel's representation of multiple defendants with potentially conflicting interests. The Supreme Court explained that counsel's joint representation may have prevented him from

---

[5] The record shows that Mr. Pacher requested Petitioner's competency evaluation and was present at all court hearings related to the matter. (*See* R. Ex. 1 at Ex. O; R. Ex. 3 at 8.)

ORDER – 5

exploring possible plea negotiations and an agreement for one defendant to testify for the prosecution, or from challenging the admissibility of evidence that might be detrimental to one defendant but favorable to another. Because the Supreme Court could not intelligently determine the scope of prejudice resulting from an attorney's failure to undertake certain trial tasks, the Court found that it must presume prejudice from counsel's conflict of interest. *Holloway*, 435 U.S. at 490. Petitioner points to no analogous conflict of interest in his case,[6] and thus this Court will not presume prejudice. In fact, the record indicates that Ms. Truitt's request for a Bill of Particulars aided Petitioner's case by requiring the Prosecution to identify which of Petitioner's alleged actions led to the specific charges against him. (R&R 6.) Petitioner therefore did not suffer any prejudice from Ms. Truitt's actions and the state appeals court was correct to dismiss this claim.

### 3.   Second counsel's abandonment of the "fight or flight" defense

Petitioner believes that he had a viable defense that his flight from police was due to his fear that they would use excessive force against him in retaliation for an earlier incident. (Pet'r's Mem. (Dkt. No. 19) 9–10.) He argues that Ms. Truitt was ineffective because she advised him to plead guilty (*id.* at 45–46) rather than pursue this "fight or flight" defense as a result of her lack of familiarity with state competency law.[7] (Obj. 12.) Petitioner points out that his competency order was issued without a formal hearing on the day that Ms. Truitt was appointed as substitute counsel, and that the competency evaluation record was sealed before Ms. Truitt's appointment. (*Id.* at 2, 12.)

Petitioner's assertions do not establish unreasonable performance under *Strickland*. Given the videotape and eyewitness evidence against him and the formal finding of competency by his examiner, Petitioner does not show how it could be unreasonable for Ms. Truitt to advise him to plead guilty to the

---

[6] None of Petitioner's stated reasons for his difficulties with Mr. Pacher could create a conflict with Ms. Truitt over a procedural matter such as a Bill of Particulars.

[7] While Petitioner allegedly "fired" Mr. Pacher in part because he chose not to pursue the "fight or flight" defense, *see supra*, Petitioner does not argue that Mr. Pacher was ineffective for this reason. (*See* Obj. 12.)

ORDER – 6

charges against him.[8] The record shows that Petitioner benefitted by accepting Ms. Truitt's advice, because his plea agreement substantially reduced the amount of prison time that he faced.[9] (*See* R. Ex. 1 at Ex. F at 130; R. Ex. 3 at 18.) Petitioner admits that Ms. Truitt reviewed the competency evaluations, familiarized herself with his "fight or flight" defense, and argued on Petitioner's behalf that Petitioner fled from police out of fear at Petitioner's sentencing hearing. (Pet'r's Mem. 38–39.) Rather than demonstrate that Ms. Truitt "abandoned" a viable defense, her actions show that she made reasonable tactical decisions in Petitioner's best interests. The state appeals court's decision to dismiss this claim was thus consistent with federal law.

### B. Alford *plea claim*

Petitioner contends that his guilty plea made pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), was equivocal and without proper constitutional safeguards. Specifically, he asserts that because he was not informed of his state statutory rights regarding his competency evaluation, his decision to plead guilty was not made with full knowledge and was not voluntary. (Pet'r's Mem. 52; Obj. 16–17.) The Supreme Court has stated that an *Alford* plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31.

Having found that the circumstances surrounding his competency evaluation did not prejudice his case, and that he did not have a viable "fight or flight" defense, Petitioner cannot demonstrate that he made his guilty plea without proper constitutional safeguards. The record reflects that the trial judge asked Petitioner repeatedly whether he understood his constitutional rights, whether he had discussed his

---

[8] Even if Petitioner could show that Ms. Truitt's advice was deficient, he could not demonstrate prejudice to his case. Where a petitioner claims that counsel did not pursue a defense instead of a plea, Petitioner must show that the defense would likely have been successful at trial in order to show prejudice under *Strickland*. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Given the result of his competency hearing and the overwhelming evidence against him, Petitioner cannot show that his "fight or flight" defense likely would have succeeded.

[9] Pursuant to the plea agreement, the State recommended a total sentence of 81 months. Under the original charges, Petitioner's standard sentencing range was 189 to 210 months. (R. Ex. 3 at 18.)

ORDER – 7

plea with his attorney, and whether it was his "free and voluntary choice" to plead guilty. Petitioner indicated that he understood the charges against him, that he understood the nature of an *Alford* plea, and that he had thoroughly discussed his rights and all of the terms of his plea statement with his attorney. (R. Ex. F at 10–23.) While he may not have been informed of his state statutory rights regarding the conduct of his competency evaluation, for the reasons previously stated, this omission did not infringe upon any of his federal constitutional rights. Thus, the state appeals court's decision to dismiss Petitioner's *Alford* plea claim was not contrary to federal law.

### C. Motion to Remand

Petitioner has requested that this Court "remand" his case to the state courts so that he may introduce an "Offer of Proof and Statement of Facts" in support of his petition. (Pet'r's Mot. to Remand.) Such relief is not appropriate, however. Rather than a remand to state court, AEDPA provides for an evidentiary hearing in federal court where a petitioner can show "(A) [that his] claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)(ii)–(B).

Because Petitioner's assertions in his "offer of proof" do not establish constitutional error, he is not entitled to an evidentiary hearing. Petitioner's "offer of proof" merely recounts his version of the events that transpired between him and his attorneys in the form of a signed affidavit. Petitioner offers no factual predicate for his claims that was not considered by the state courts.[10] Petitioner was granted a full and fair hearing on all of his claims by Washington courts, as well as a comprehensive review by this

---

[10] In its opinion dismissing Petitioner's PRP, the state appeals court noted that there was nothing in the record to support Petitioner's assertion that he had not been informed of his statutory rights regarding the conduct of his competency hearing. (R. Ex. 13 at 3.) Even if Petitioner's "offer of proof" could be considered a new factual predicate for this claim, it would not establish constitutional error for the reasons stated *supra* subsection III.A.1.

ORDER – 8

1  Court. He is not entitled to any additional hearing on his petition.

2  **IV.    CONCLUSION**

3        For the foregoing reasons, the Court ADOPTS the Report and Recommendation. Petitioner's

4  petition is therefore DENIED. Petitioner's Motion to Remand is also DENIED. The Clerk is

5  DIRECTED to send copies of this Order to Petitioner, Respondent, and Magistrate Judge Benton, and to

6  CLOSE this case.

7        SO ORDERED this 4th day of January, 2007.

8

9  *[signature: John C. Coughenour]*

10        John C. Coughenour

11        United States District Judge

26  ORDER – 9